Case No. 25-11639-A

_____

In the United States Court of Appeals for the Eleventh Circuit

_____

Kirk Michael Fields,
Plaintiff – Appellee

v.

Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird &
Kayelyn Lewis
Defendants - Appellants

_____

Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
Case No. 1:22-cv-03684-LMM-JKL

_____

**BRIEF OF APPELLANTS KYLE HOWSE, ARIEL STEWART, WAYNE
JOHNSON, ROINELL LEWIS, CHRISTIAN D'ALLAIRD
& KAYELYN LEWIS**

_____

Richard A. Carothers
Angela C. Couch
Cullen B. Threlkeld
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
richard.carothers@carmitch.com
angela.couch@carmitch.com
cullen.threlkeld@carmitch.com
*Counsel for Appellants*

*Case No. 25-11639-A*
*Fields v. Howse, et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1(a), the following is a complete list of trial judges, attorneys, persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this particular case:

1. Bondurant, Mixson & Elmore, LLP – Firm representing Plaintiff/Appellee.

2. Carothers & Mitchell, LLC – Firm representing Defendants/Appellants Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird & Kayelyn Lewis.

3. Carothers, Richard A. – Attorney for Defendants/Appellants Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird & Kayelyn Lewis.

4. Couch, Angela C. – Attorney for Defendants/Appellants Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird & Kayelyn Lewis.

5. D'Allaird, Christian – Defendant/Appellant

6. Fields, Kirk Michael – Plaintiff/Appellee

7. Gwinnett County, Georgia – Defendant/ Non-Party to Appeal

8. Howse, Kyle – Defendant/Appellant

9.    Johnson, Wayne – Defendant/Appellant

10.   Larkins III, Hon. John K. - United States Magistrate Court Judge

11.   Lewis, Kayelyn – Defendant/Appellant

12.   Lewis, Roinell – Defendant/Appellant

13.   May, Hon. Leigh Martin - United States District Court Judge

14.   Page, Edwin Allen – Attorney for Plaintiff/Appellee

15.   Seals, Amanda Kay – Attorney for Plaintiff/Appellee

16.   Stewart, Ariel – Defendant/Appellant

17.   Threlkeld, Cullen B. – Attorney for Defendants/Appellants Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird & Kayelyn Lewis.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

COME NOW Defendants/Appellants Kyle Howse, Ariel Stewart, Wayne Johnson, Roinell Lewis, Christian D'Allaird, and Kayelyn Lewis ("the Officers") and respectfully submit that oral argument is needed in this case. The principal basis for appeal is the Officers' contention that the Officers are entitled to qualified immunity, because the Officers did not violate clearly established law. The Officers also contend that Plaintiff Kirk Michael Fields ("Fields") did not suffer any constitutional violation. Regarding Fields' claim of property deprivation, the Officers contend that oral argument would be helpful. The Officers have been unable to find precedent of a Court determining that law enforcement had effectuated an unconstitutional seizure of property in circumstances like those in this case, thereby presenting an issue of first impression in this Circuit.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT** . . . . . . . . . . . . . . . . . . . . C-1 - C-2

**STATEMENT REGARDING ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . .i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

**TABLE OF CITATIONS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-viii

**STATEMENT REGARDING JURISDICTION**. . . . . . . . . . . . . . . . . . . . . . . .ix

**STATEMENT OF THE ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE CASE - RELEVANT PROCEDURAL HISTORY**. .. . 2

**STATEMENT OF THE CASE - RELEVANT FACTS** . . . . . . . . . . . . . . . . . 2-9

    A.    June 10, 2021 Incident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    March 24, 2022 Incident . . . . . . . . . . . . . . . . . . . . . . . . . . .5

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

    A.    The District Court erred by not analyzing whether
        the Officers violated clearly established law. . . . . . . . . . . . . . .9

    B.    The District Court erred by applying the incorrect legal
        framework for determining probable cause. . . . . . . . . . . . . . .9

    C.    The District Court erred in applying the incorrect legal
        framework for determining whether an unconstitutional
        seizure occurred. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    D.    The District Court erred by not considering whether the
        Officers were entitled to qualified immunity on Fields's
        excessive force claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

E.      The District Court erred in determining the Officers were not entitled to official immunity on Fields's state law claim of trespass to property. . . . . . . . . . . . . . . . . . . . . . .12

**STANDARD OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . 13-39

A.      The District Court erred by not analyzing whether Defendants violated clearly established law. . . . . . . . . . . . . . . 13

      i.  False Arrest (Counts I and V) . . . . . . . . . . . . . . . . . . . . ..15

      ii.  Deprivation of Property Interests (Counts III and VII) .. . . 19

B.      The District Court erred by applying the incorrect legal framework for determining probable cause. . . . . . . . . . . . . . . ..20

      i.  June 10, 2021 Arrest. . . . . . . . . . . . . . . . . . . . . . . . . ..22

      ii.  March 24, 2022 Arrest. . . . . . . . . . . . . . . . . . . . . . . . . 24

C.      The District Court erred in applying the incorrect legal framework for determining whether an unconstitutional seizure occurred. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      i.  June 10, 2021 Arrest. . . . . . . . . . . . . . . . . . . . . . . . . ..29

      ii.  March 24, 2022 Arrest. . . . . . . . . . . . . . . . . . . . . . . ...31

D.      The District Court erred by not considering whether the Officers were entitled to qualified immunity on Fields's excessive force claim. . . . . . . . . . . . . . . . . . . . . . . 31

      i.  March 24, 2022 Arrest. . . .. . . . . . . . . . . . . . . . . . . .. .33

E.      The District Court erred in determining the Officers were not entitled to official immunity on Fields' state law claim of trespass to property. . . . . . . . . . . . . . . . . . . . . . . . . .37

iii

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39-40

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## TABLE OF CITATIONS

Adams v. Hazelwood
271 Ga. 414,  520 S.E.2d 896 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Andrews v. Marshall
845 F. App'x 849 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Baker v. City of Madison
67 F.4th 1268 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Berry v. Hennepin County
2024 WL 3495797 (D. Minn. July 22, 2024) . . . . . . . . . . . . . . . . . . . . . . . .29

Bradley v. Benton
10 F.4th 1232 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34, 35

Brooks v. Miller
78 F.4th 1267 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14

California v. Hodari D.
499 U.S. 621 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Charles v. Johnson
18 F.4th 686 (11th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .32, 33, 34

Church v. City of Huntsville
30 F.3d 1332 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .30

Crook v. The State
 156 Ga. App. 756, 275 S.E.2d 794 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Davis v. City of Apopka
78 F.4th 1326 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .23

Devenpeck v. Alford
543 U.S. 146 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 10, 21

District of Columbia v. Wesby
583 U.S. 48 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 16, 22, 23

Evans v. Hightower
117 F.3d 1318 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .27

Fils v. City of Aventura
647 F.3d 1272 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34-35

Garcia v. Casey
75 F.4th 1176 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

Gates v. Khokhar
884 F.3d 1290 (11th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . .23, 38, 39

Gill ex rel. K.C.R. v. Judd
941 F.3d 504 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 27

Graham v. Connor
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 28, 32, 33, 36

Hinton v. The State
289 Ga. App. 309, 656 S.E.2d 918 (2008) . . . . . . . . . . . . . . . . . . . . . . .  16, 17

Hoefling v. City of Miami
811 F.3d 1271 (11th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . .10, 19, 20, 28

Hutton v. Strickland
919 F.2d 1531 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Ireland v. Prummell
53 F.4th 1274 (11th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

Jackson v. City of Atlanta
97 F.4th 1343 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .ix

Johnson v. City of Atlanta
107 F.4th 1292 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . .. . . . . 3, 13, 14, 27, 32

Lee v. Ferraro
284 F.3d 1188 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .ix

Mommies Properties, LLC v. Semanson
366 Ga. App. 153, 880 S.E.2d 376 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

Miller v. Palm Beach County Sheriff's Office
129 F.4th 1329 (11th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Nolin v. Isbell
207 F.3d 1253 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

Plowright v. Miami Dade County
102 F.4th 1358 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Pottinger v. City of Miami
810 F. Supp. 1551 (S.D. Fla. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Reed v. DeKalb County.
264 Ga. App. 83, 589 S.E.2d 584 (2003) . . . . . . . . . . . . . . . . . . . . . . . . .37, 38, 39

Sebastian v. Ortiz
918 F.3d 1301 (11th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

Selvy v. Morrison
292 Ga. App. 702, 665 S.E.2d 401 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Soldal v. Cook County, Illinois
506 U.S. 56 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

Sylvester v. Fulton County. Jail
94 F.4th 1324 (11th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Tennessee v. Garner
471 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .28

Torres v. Madrid
592 U.S. 306 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Waldron v. Spicher
954 F.3d 1297 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**UNITED STATES CONSTITUTION**

Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . 10, 16, 17, 20, 26, 27, 28, 29, 34, 36

**FEDERAL STATUTES**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .ix

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .ix, 2

**FEDERAL LOCAL RULES**

11ᵗʰ Cir. R. 26-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .C-1

**GEORGIA CONSTITUTION**

Ga. Const. Art. I., Sec. II, Para. IX(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 37

**GEORGIA STATUTES**

O.C.G.A. § 16-7-42(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

O.C.G.A. § 16-7-43. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

O.C.G.A. § 16-7-43(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

O.C.G.A. § 16-7-52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

O.C.G.A. § 16-7-63(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25, 26

O.C.G.A. § 40-6-97(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

**GEORGIA LAWS**

2006 Ga. Laws 538 (H.B. 1320) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

## STATEMENT REGARDING JURISDICTION

The District Court's subject matter jurisdiction is proper, because Fields brings claims under 42 U.S.C. § 1983. Appellate jurisdiction is proper under 28 U.S.C. § 1291. The Officers appeal the District Court's denial of qualified immunity upon the Officers' Motions to Dismiss. Normally, final orders require a complete disposition of the case. An exception, however, are decisions on the issue of qualified immunity pursuant to the collateral order doctrine. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1351 (11th Cir. 2024). This is because qualified immunity is a defense from suit, not just a defense to liability, and it must be determined at the earliest possible stage of the litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Officers herein adopt in full their response to this Court's Jurisdictional Question filed on June 18, 2025 [Doc. 14 in this Court]. The District Court entered its Order denying qualified immunity on April 28, 2025. The Officers timely filed a Notice of Appeal on May 13, 2025. Thus, this Court has jurisdiction to hear this appeal.

## **STATEMENT OF THE ISSUES**

The Officers respectfully submit the issues for this Court's consideration are as follows:

1. Whether Officers Stewart, R. Lewis, and Johnson violated clearly established law when they arrested Fields for littering;

2. Whether the District Court erred in considering the Officers' subjective state of mind when analyzing if the Officers had arguable probable cause;

3. Whether the District Court erred in determining Fields had adequately alleged a constitutional violation of his property interests when the District Court failed to consider whether the Officers' actions amounted to unreasonable seizures;

4. Whether the Officers' actions, if they were unreasonable seizures, amounted to violations of clearly established law;

5. Whether Fields adequately pled facts to support an excessive force claim against Officers Howse, D'Allaird, and K. Lewis, assuming Defendants did not falsely arrest Fields;

6. Whether Officers Howse, D'Allaird, and K. Lewis violated clearly established law by using force to arrest Fields; and

7. Whether the Officers are entitled to official immunity on Fields' state law trespass on property claims.

1

## STATEMENT OF THE CASE - RELEVANT PROCEDURAL HISTORY

Fields initially proceeded *pro se*, filing his original Complaint on September 12, 2022 pursuant to 42 U.S.C. § 1983. (Doc. 1). After several procedural changes, including an unsuccessful appointment of counsel, address changes, motions to dismiss, a dismissal, a re-opening, a consolidation, and a new appointment of counsel, Fields—through current counsel—filed an Amended Complaint on September 9, 2024, naming the Defendants in this appeal. (Doc. 75). The Officers filed Motions to Dismiss on September 23, 2024 and October 8, 2024, which form the basis of this appeal.

The Magistrate issued a single Report and Recommendation on January 29, 2025, addressing all pending Motions to Dismiss and recommending the Motions be denied. (Doc. 100). The Officers filed Objections to the Magistrate's Report on February 12, 2025, to which Fields filed a Response. (Doc. 106). On April 28, 2025, the District Court adopted the Magistrate's Report in part and entered its Order denying the Officers' Motions to Dismiss. (Doc. 112). The adoption was only in part, because the District Court extended the time for Fields to perfect proper service, a defense raised in the Motions. (Id.) The Officers filed a Notice of Appeal on May 12, 2025, appealing the April 28, 2025 Order. (Doc. 123).

## STATEMENT OF THE CASE - RELEVANT FACTS

This is a civil rights case arising out of two incidents involving Fields and

officers of the Gwinnett County Police Department.[1] Fields asserts constitutional claims of false arrest, excessive force, and deprivation of property, as well as a Georgia state law claim of trespass to property.

**A. June 10, 2021 Incident.**

On June 10, 2021, Officer Stewart was dispatched to a wooded area off Wabash Drive, Lawrenceville, Georgia in response to a call from the Gwinnett County Department of Corrections. (Doc. 87-3; Doc. 75 at ¶¶34-40). The Department of Corrections had previously been to the location to pick up trash, but Fields—a homeless man—lived in the woods and claimed some of the items were his belongings. (Doc. 75 at ¶¶36-37). Fields had lived in the area for the past few months and had received a trespass warning from the neighboring parcel of land, which was an apartment complex. (Doc. 87-3 at 1:30-2:10, Doc. 75 at ¶35). Fields alleges that at the time of Officer Stewart's arrival, he was separating trash from items he intended to keep. (Doc. 75 at ¶¶39-40). Fields told Officer Stewart that the Department of Corrections had asked him to move his belongings some time ago, but he did not have the means to move everything. (Doc. 87-3 at 3:00-3:35).

---

[1] The following recounting of the facts are taken from Fields' Amended Complaint (Doc. 75) and the Officers' body camera footage (Docs. 80-3, 80-4, 80-5, 87-3, 87-4, and 87-5). The Court may consider the incidents as depicted in the body camera footage under the incorporation by reference doctrine as the footage is central to Fields' claims, and its authenticity is undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1299 (11th Cir. 2024).

Officer Stewart asked Fields to show her his trespass paperwork. (Id. at 4:10). Fields brought Officer Stewart further into the wooded area to where he appeared to keep the bulk of his items. (Id. at 7:00-10:00). As Officer Stewart walked with Fields into the wooded area, she passed piles of assorted electronics, furniture, paper/plastic refuse, and clothing. (Id.) Approximately ten minutes after Officer Stewart arrived, Officer R. Lewis arrived on scene. (Id. at 10:30). As Officer Stewart approached Officer R. Lewis, Officer Stewart's audio cuts out. (Id.) Officer R. Lewis's audio stays on for about a minute, then cuts out. (Doc. 87-4 at 1:00-1:55). Officers Stewart and R. Lewis appear to talk for about two minutes, with about 50 seconds of audio cut out. (Id. at 1:55-2:45). Once the audio cuts back in, Officers Stewart and R. Lewis are discussing the trespass notice and the fact that they could not determine whether Fields was occupying the trespassed parcel. (Doc. 87-3 at 13:00-14:10).

Officer Stewart returned to her patrol vehicle and, together with Officer R. Lewis, they looked up whether Fields was violating the urban camping ordinance. (Id. at 17:45). After determining Fields was not violating the urban camping ordinance because Fields was on private property, Officer Stewart stated "We'll let the Sergeant make a decision." (Id. at 19:25). The Officers' audio then cuts off again. Officer Stewart is seen looking up litter ordinances on her computer. (Id. at 19:40). Officer Johnson arrives on scene with his audio on, and together, the three Officers discuss Fields' trespass warning and the property lines. (Doc. 87-5 at 0:30-2:20).

4

Officer Johnson's audio cuts out mid-conversation. (Id. at 2:20).

Minutes later, Officer Stewart approached Fields, and her audio cuts back on. (Doc. 87-3 at 26:10). Officer Stewart informs Fields she is arresting him for littering. (Id. at 26:45). Fields says "I'm cleaning it." (Id.) Officer Stewart then talks with him for nearly four minutes, trying to get him to peacefully submit to the arrest (Id. at 26:45-30:30). Fields now claims he has a storage unit for his things. (Id. at 27:45). Officer Stewart stated she told him two months ago he needed to "clean up his stuff" and that Fields told her back then that he was working on a storage unit. (Id at 28:25-28:40). Fields agreed with those statements and stated that Officer Stewart warned him that "they" would come if he did not clean it up. (Id.) Fields stated he did not intend to leave things there. (29:00).

Fields stated he was not willing to be arrested, and the Officers begin to arrest Fields by grabbing his arms. (Id. at 29:00-30:30). Fields moves his body on top of his hands, and Officer Stewart uses her taser, without prongs. (Id. at 30:30-31:00). Eventually, the Officers are able to get Fields' hands behind his back, and they take Fields into custody. (Id. at 31:00). Before placing Fields into the patrol vehicle, Officer Stewart empties Fields' pockets and places all items she found into an evidence bag to take with them. (Id. at 36:10 and 38:40).

### B. March 24, 2022 Incident.

On March 24, 2022, during morning traffic time, Officer D'Allaird was

dispatched to the side of a busy highway in Gwinnett County, Georgia. (Doc. 80-4). Upon arrival, Officer D'Allaird observed Fields on the grass right of way of the road, holding a gas station type of squeegee and a sign that stated "Need." (Id. at 0:05). Next to Fields was also a campfire. (Id.) Fields had a raised tire rim next to the roadside, with a white flag sticking out of it and an unknown sign face down on the grass in front of the rim. (Id.) Next to the fire and tire rim was a motorized shopping cart with assorted items. (Id.) The scene was next to a metal guardrail that had some low brush on the other side of it. (Id.) The brush became a hillside with a gradual slope through a wooded area. (Id.)

Fields stated to Officer D'Allaird that he had built the fire because it was cold that morning. (Id. at 0:30). Fields and Officer D'Allaird argued over whether the fire was sufficiently contained. (Id. at 1:40). After Officer D'Allaird had been on scene for approximately two minutes, the fire gave a popping explosion and burst of flame, which both Fields and Officer D'Allaird agreed was probably a lighter. (Id. at 2:08). Fields stated that "he could not live in the woods anymore," and asked Officer D'Allaird if he believed it was "a good idea" to "make space for cars" "like this," gesturing to an area on the side of the road. (Id. at 2:40). While waiting for the Fire Department to show up to put out the fire, Fields suggested they could put it out with the gallon of window cleaner he had. (Id. at 5:25).

Officer D'Allaird returned to his patrol vehicle and conducted an information

6

search. (Id. at 8:20-10:15). A contact on the radio informed Officer D'Allaird that Fields may have an outstanding warrant and that it "may be good to take him in." (Id at 9:15-9:50). Ultimately, no warrant was found. (Id.) The Fire Department arrived and stepped on the fire to put it out. (Id. at 10:45). Officer Howse arrived on scene, and Officer D'Allaird stated that it appeared Fields was soliciting cars for window cleaning, including Officer D'Allaird himself when he first arrived. (Id. at 14:15-15:15). Officer Howse stated he would probably take Fields in for disorderly conduct. (Id. at 15:15). Officer Howse also stated that the Community Relations Team was trying to get Fields a place to live, but once they got close to being done, Fields "ghosted them" and is now causing more issues. (Id. at 15:15-15:40). Officer Howse stated he was going to try to find something "a little more applicable to him than disorderly conduct." (Id. at 16:00). Officer D'Allaird stated he believed Fields may have committed a fire offense, because his fire was not controlled. (Id. at 16:15).

Officer D'Allaird then returned to his vehicle and searched statutes and ordinances. (Id. at 16:30-19:30). After a few minutes of searching, Officer D'Allaird called someone on the phone, and the audio cuts out. (Id. at 19:45). He spoke with the individual for approximately three minutes before hanging up and exiting his vehicle. (Id. at 23:45). Officer D'Allaird approached Officer Howse's vehicle and told Officer Howse that he just spoke with one of the arson investigators and they will likely not be able to charge Fields with arson. (Id. at 24:05). Officers D'Allaird

and Howse spoke with a supervisor on the phone, and ultimately, they determined they would charge Fields with solicitation. (Id. at 24:25-25:30).

Officer K. Lewis arrived on scene, and all three Officers approach Fields. (Id. at 27:30-28:00). Officer Howse told Fields he was under arrest for solicitation. (Id. at 28:00). Fields argued for about 15 seconds before Officer Howse reached for Fields' right arm. (Id. at 28:10). Officer K. Lewis reached for Fields' left arm. (Id. at 28:15). Fields attempted to pull away from them and leaned against the metal guardrail. (Id.) Officers D'Allaird and Howse warned Fields he was going to get tased. (Id.) Fields said "I don't care" and swung his leg over the guardrail and onto the opposite side facing the woods. (Id.) Officer D'Allaird then deployed his taser on Fields, who fell over the guardrail onto the wooded side with the low brush. (Id. at 28:22).

Fields began to get up, but then rolled away from Officer K. Lewis as she stepped over the guardrail towards him. (Id. at 28:25). Fields continued down the wooded hill away from the Officers. (Id.) The Officers ordered Fields to show them his hands, but Fields refused. (Doc. 80-4 at 28:30). The Officers wrestled with Fields and got him on his stomach. (Id. at 28:30-29:00). Fields continued to resist the Officers, cussed at the Officers, and said he was not going to jail alive. (Doc. 80-4 at 29:00-30:30). Eventually, the Officers were able to get Fields' hands behind his back and handcuffed. (Id. at 30:30). Fields continued to move around and kick his

8

legs while cuffed, impeding the Officers' ability to take him up the hill. (Id. at 30:30-35:30). The Officers then zip-tied Fields' legs and took him up the hill to the patrol vehicles. (Id. at 35:30 and 58:45).

## SUMMARY OF ARGUMENT

**A. The District Court erred by not analyzing whether the Officers violated clearly established law.**

The District Court erred in its qualified immunity analysis by not analyzing whether the Officers violated clearly established law. The Officers raised the defense of qualified immunity to all three constitutional claims arising out of both incidents: false arrest (Counts I and V), excessive force (Counts II and VI), and deprivation of property interests (Counts III and VII). The District Court discussed discretionary authority and whether Fields suffered a constitutional violation, but the court failed altogether to conduct an analysis of whether the alleged constitutional deprivation violated clearly established law in the circumstances presented to the Officers. Otherwise, Fields has failed to meet his burden to prove a violation of clearly established law. Therefore, the District Court erred in determining the Officers were not entitled to qualified immunity.

**B. The District Court erred by applying the incorrect legal framework for determining probable cause.**

The Officers contend they had probable cause, or at least arguable probable cause, to arrest Fields for each offense. In addressing this argument, the District Court erred by applying the incorrect legal framework when it improperly relied

9

solely on the Officers' subjective intent. The District Court did not address the elements of the crimes Fields was charged with in each incident. Instead, the District Court focused solely on the Officers discussing what to charge Fields with and the periods of missing audio. However, the law is clear that an officer's subjective intent plays no part in the probable cause or arguable probable cause analysis. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Therefore, the District Court did not apply the correct legal framework for determining whether the Officers had probable cause.

## C. The District Court erred in applying the incorrect legal framework for determining whether an unconstitutional seizure occurred.

The District Court erred in applying the incorrect legal framework for determining whether an unconstitutional seizure of Fields' property interests had occurred, because, if a seizure did occur, the District Court stopped short of analyzing whether the seizure was reasonable. "In order to establish a Fourth Amendment violation, the plaintiff must demonstrate that a seizure occurred and that it was unreasonable." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 523 (11th Cir. 2019) (citation omitted). Here, the District Court determined that Fields had plausibly alleged a seizure because he had alleged a meaningful interference with his possessory interest in his personal property. The District Court erred when it went no further to determine if the seizure was reasonable. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016). The Officers contend the circumstances

militate against finding an unreasonable seizure, because Fields' privacy interests in his property were absent or minimal. Therefore, the District Court applied an incorrect legal framework when it determined a constitutional violation had plausibly been alleged without first examining whether the alleged seizure was reasonable.

**D. The District Court erred by not considering whether the Officers were entitled to qualified immunity on Fields' excessive force claim.**

The District Court erred by not considering whether Defendants were entitled to qualified immunity on Fields' excessive force claim. The Officers contend they did not employ excessive force under the *Graham* factors and did not violate clearly established law. *Graham v. Connor*, 490 U.S. 386 (1989). The District Court did not conduct either analysis, because it concluded that the excessive force claim was subsumed into the false arrest claim. However, the Officers contend that the false arrest claim should have been barred by qualified immunity, which was incorrectly determined by the District Court. Accordingly, if this Court determines the Officers are entitled to qualified immunity on the false arrest claim, then this Court should either (1) determine if the Officers employed excessive force or violated clearly established law regarding the excessive force claim, as the Officers argued against in the proceedings below, or (2) remand the excessive force claim back to the District Court with instructions to conduct a qualified immunity review of the excessive force claim.

11

**E. The District Court erred in determining the Officers were not entitled to official immunity on Fields' state law claim of trespass to property.**

The District Court erred in determining the Officers were not entitled to official immunity on Fields' state law claim of trespass to property, because Defendants had probable cause to arrest Fields for the offenses for which he was charged and Fields failed to allege sufficient facts establishing that any officer maliciously intended to interfere with his property interests without justification. In Georgia, officers enjoy official immunity to state law tort claims arising out of the performance of their discretionary duties, unless their actions were performed with actual malice or actual intent to cause injury. Ga. Const. Art. I., Sec. II, Para. IX(d). The District Court relied on its finding that the Officers arrested Fields without probable cause to infer that the Officers plausibly intended to maliciously interfere with Fields' property interests without justification. However, as discussed herein, the Officers had probable cause to arrest Fields, and even if the Officers lacked probable cause, Georgia law provides that the lack of probable cause itself is not indicative of actual malice for official immunity purposes. Further, Fields' Amended Complaint cannot survive the Officers' Motions to Dismiss, because it contains insufficient facts to plausibly establish that the Officers actually intended to deprive him of his property without justification. Therefore, the District Court erred in not finding that the Officers are entitled to official immunity on Fields' state law trespass to property claim.

## STANDARD OF REVIEW

This appeal comes before the Court upon the District Court's denial of the Officers' Motions to Dismiss, which is reviewed *de novo*. *Johnson*, 107 F.4th at 1297. The Court accepts the facts as alleged in the Complaint as true and reviews the facts in the light most favorable to Fields. *Id.* However, under the incorporation by reference doctrine, the Court may consider the Officers' body camera footage, because the footage is central to Fields' claims and undisputed. *Id.* at 1299. Where the video is clear and obviously contradicts Fields' alleged facts, this Court accepts the video's depiction instead of the Complaint's account and views the facts in the light depicted by the video. *Id.* at 1301 (citing *Baker v. City of Madison*, 67 F.4th 1268, 1277-78 (11th Cir. 2023).

## ARGUMENT

### A. The District Court erred by not analyzing whether Defendants violated clearly established law.

The District Court erred in its qualified immunity analysis by not analyzing whether Defendants violated clearly established law. Defendants raised the defense of qualified immunity to all three constitutional claims arising out of both incidents: false arrest (Counts I and V), excessive force (Counts II and VI), and deprivation of property interests (Counts III and VII). "Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform in carrying out their duties." *Johnson*, 107 F.4th at 1301 (citing *Brooks v.*

13

*Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation omitted).

Qualified immunity requires the Court to engage in a burden-shifting analysis. First, the Officers must show they were acting within their discretionary authority. *Johnson*, 107 F.4th at 1301. Then, Fields must show that the Officers violated a constitutional right and that the right was "clearly established" at the time of the incident. *Id.* The law is settled that whether and how an officer makes an arrest is within that officer's discretionary authority. *Id.* Therefore, it is Fields' burden to allege that he suffered a constitutional injury that was clearly established. Whether Fields suffered a constitutional injury will be discussed below. The District Court conducted an incomplete qualified immunity analysis by failing to address whether Fields suffered a clearly established constitutional violation.

> District courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. But before rejecting a defense of qualified immunity, a district court must address each issue with sufficient explanation to provide this Court with an opportunity to engage in meaningful appellate review.

*Miller v. Palm Beach Cnty. Sheriff's Office*, 129 F.4th 1329, 1333 (11th Cir. 2025) (citations omitted).

The Officers' Motions to Dismiss specifically raised qualified immunity, and the question of whether Defendants' conduct was a violation of clearly established

14

law should have been decided by the District Court, even at the motion to dismiss stage. *Id.* at 1333-34 ("An entitlement to qualified immunity raised on a motion to dismiss *will* be granted if the complaint fails to allege the violation of a clearly established constitutional right. A district court must adjudicate a defense of qualified immunity at whatever stage it is raised.") (citations omitted) (emphasis original). In this case, the Officers did not violate clearly established law.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent…It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63 (citations omitted). Moreover, "the clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* "This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 63-64.

    i.    <u>False Arrest (Counts I and V).</u>

When analyzing whether an arrest violated clearly established law, the Supreme Court has instructed that the specificity of prior law "is especially

15

important in the Fourth Amendment context." *Id.* at 64 (citation omitted). "Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered. Thus, we have stressed the need to identify a case where an officer *acting under similar circumstances was held to have violated the Fourth Amendment.*" *Id.* (citation omitted) (emphasis added). Fields argued in his response briefs that an arrest without arguable probable cause is a violation of clearly established law. (Doc. 91 at p. 14; Doc. 92 at p. 9). However, Fields then slipped back into arguing whether a constitutional violation had occurred—i.e. whether Defendants had probable cause to arrest Fields—rather than what case law would clearly establish that *every* reasonable officer would have known they lacked probable cause to arrest Fields in those circumstances (Id.)

Fields was arrested on June 10, 2021 for littering. O.C.G.A. § 16-7-43(a) provides "It shall be unlawful for any person or persons to dump, deposit, throw, or leave or to cause or permit the dumping, depositing, placing, throwing, or leaving of litter on any public or private property." "Litter" is defined as rubbish, refuse, junk, or other waste material that is discarded or abandoned. O.C.G.A. § 16-7-42(1)(a).

Focusing on the "discarded or abandoned" aspect of the definition, Fields cited only one case involving the throwing of a cigarette butt out of a car window. (Doc. 92 at p. 10 (citing *Hinton v. State*, 289 Ga. App. 309, 310, 656 S.E.2d 918

16

(2008)). Assuming *arguendo*, an officer is required to establish a suspect's intent to forever leave an item of trash behind—which the littering statute is not altogether clear about—then the *Hinton* case merely stands for one instance of what probable cause for littering *is* in the context of throwing cigarettes out of a window. The *Hinton* case does not stand for a violation of Fourth Amendment rights when an officer arrests a homeless individual for littering when that individual is surrounded by refuse, but claims he intends to move some of it.

Moreover, it is not clearly established that Georgia's littering statute requires a *mens rea* element to discard or abandon litter. "In making probable cause decisions, law enforcement officers are not charged with knowing legal technicalities and nuances." *Hutton v. Strickland*, 919 F.2d 1531, 1541 (11th Cir. 1990). Misdemeanor littering, which is the charge Fields was arrested for, could be construed as a strict liability crime when the statute is read in conjunction with the changes of the Comprehensive Litter Prevention and Abatement Act. 2006 Ga. Laws 538 (H.B. 1320). Notably, when the Georgia Legislature changed the litter statutes in 2006, it purposefully included the word "intentionally" to the offense of "egregious littering," which it denotes as an aggravated and high misdemeanor. *Id.* at p. 7; O.C.G.A. § 16-7-52. The Legislature made no such change for the littering statute of O.C.G.A. § 16-7-43, the one Fields was charged under, which remains a simple misdemeanor. *Id.* at pp. 2-3.

17

Here, the Officers found Fields surrounded by refuse. Officer Stewart had spoken with Fields two months prior about cleaning the refuse, and back then, Fields had given Officer Stewart the same story that he intended to move his items to a storage unit, which still had not occurred. Ultimately, the Officers did not violate clearly established law when they arrested Fields for littering, and Fields has failed to meet his burden to establish the same.

Fields was arrested for solicitation on March 24, 2022. The Georgia solicitation statute provides "no person shall stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle." O.C.G.A. § 40-6-97(b). Fields does not contest that he was standing on the highway, but he argues Defendants did not have arguable probable cause, because they did not observe Fields in the act of "selling" or "asking for donations." (Doc. 91 at pp. 14-15). In support of Fields' argument that the Officers violated clearly established law, Fields cites to *Crook v. State*, 156 Ga. App. 756, 757, 275 S.E.2d 794 (1980), for the proposition that the Officers must actually observe Fields impeding traffic by attempting to solicit motorists. (Doc. 91 at p. 16). However, *Crook* involved a criminal defendant accused of solicitation when he gave his business card to a man who had just been in a car wreck and was standing behind his vehicle.

Here, the Officers found Fields next to the highway with busy morning traffic passing by, holding both a sign that said "Need" and a squeegee (Doc. 80-4 at 00:01).

18

Fields had a tire rim sitting upright immediately next to the road with a white cloth sticking up and angled towards oncoming traffic. (Id.) When discussing how to put out the fire, Fields admitted to having "a whole gallon of window cleaner." (Id. at 5:30). Indeed, Officer D'Allaird told Officer Howse at the scene that he believed Fields was approaching D'Allaird to ask if he needed a window clean when D'Allaird first arrived. (Id. at 14:15-15:15). Fields also asked Officer D'Allaird if he thought it was a good plan to create space on the side of the road so cars could pull over for him. (Id. at 2:40). All of these facts establish at least arguable probable cause for an arrest for solicitation. Even if these facts do not establish arguable probable cause, Fields has not pointed to any law clearly establishing that in the circumstances the Officers confronted, they should have known they did not have probable cause to arrest Fields for solicitation.[2]

    ii.    <u>Deprivation of Property Interests (Counts III and VII).</u>

Fields argues that the Officers violated clearly established law by failing to secure his property upon arrest, ostensibly under the broader principal that any removal and destruction of property is an unconstitutional seizure. (Doc. 91 at pp. 24-25; Doc. 92 at pp. 12-13). Fields cited to *Hoefling v. City of Miami*, 811 F.3d

---

[2] The *Crook* case is distinguishable, because the *Crook* court focused solely on the defendant's actions being directed only at a person who was not occupying a vehicle. Moreover, a violation is "clearly established" only when addressed by the United States Supreme Court, this Court, or in this case, the Georgia Supreme Court. *Waldron v. Spicher*, 954 F.3d 1297, 1304-1305 (11th Cir. 2020) (citation omitted).

1271 (11th Cir. 2016), where this Court held that a city's confiscation and destruction of a derelict sail boat constituted an unconstitutional seizure. However, *Hoefling* was an affirmative act by a municipality to seize property and destroy it. The facts in *Hoefling* are not substantially similar to the circumstances confronted by the Officers in this case. While the law does not beholden Fields to find an exact match of the facts, neither Fields nor the Officers could find any cases across any Circuit, dealing with homeless individuals or not, that held an officer's failure to secure property upon arrest was a violation of the Fourth Amendment. Stepping away from the broader principal, the Officers could not find any cases that would place *every* officer on notice that they would need to secure all "property" in the surrounding woodlands or highway upon the arrest of a homeless individual, so that the arrestee may have the chance to sift through the items and determine what is his and what should be discarded at a later date. Therefore, Fields has failed to sufficiently show the Officers violated clearly established law by not securing Fields' property upon arrest.

## B. The District Court erred by applying the incorrect legal framework for determining probable cause.

The District Court erred by applying the incorrect legal framework for determining probable cause because the court relied exclusively on the Officers' subjective intent. Probable cause is "whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Garcia v. Casey*, 75 F.4th

20

1176, 1186 (11th Cir. 2023) (citation omitted). However, in the context of qualified immunity, "an officer need not have actual probable cause, but only arguable probable cause." *Id.* "An officer lacks arguable probable cause only if the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Id.* (citation omitted).

The District Court focused solely on the Officers discussing what to charge Fields with and the periods of missing audio. (Doc. 112 at p.15 ("Indeed, the video evidence that they provided show them scheming to find a reason to arrest Fields and then turning off their body cam microphones for extended periods, indicating that they lacked probable cause and were well aware that they were in the process of possibly violating Fields' rights.")) The District Court cited no authority for why these facts mattered in determining arguable probable cause or whether such conduct was a clearly established constitutional violation. *See Devenpeck*, 543 U.S. at 153 (arresting officer's state of mind "is irrelevant to the existence of probable cause.") (citation omitted); *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1330 (11th Cir. 2024) ("we do not consider evidence that the arresting officer may have harbored ill will toward the plaintiffs; all that matters is whether an objectively reasonable officer could have made the same seizure under the same circumstances.") (citation omitted).

21

The District Court did not address the elements of the crimes Fields was charged with in each incident—littering and solicitation, respectively. The District Court also did not point out any factual dispute between Fields' allegations and the body camera footage that had any bearing on arguable probable cause. As such, the District Court did not apply the correct legal framework for determining arguable probable cause, and it erred in its probable cause analysis.

i.  June 10, 2021 Arrest.

Under the correct legal framework, the Officers had arguable probable cause to arrest Fields. As discussed above regarding the June 10, 2021 arrest, Fields' argument centers on his contentions that he told the Officers he did not intend to abandon his property and intent is ostensibly an element of misdemeanor littering. "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (citations omitted). "Probable cause is not a high bar." *Id.*

*Wesby* itself deals with intent crimes, which taking Fields' contentions as true, is the category of charge Fields' littering offense falls into. In *Wesby*, the plaintiffs were partygoers who scattered and hid when the police arrived at the house where they were partying. Police arrested the plaintiffs for unlawful entry without

22

permission. The plaintiffs had told the police they had the permission of the house renter to be there, but police later learned that the "house renter" was not actually a renter and had no authority to let people in the house. The unlawful entry charge required the arrestees to know they did not have permission to be there.

The *Wesby* court determined the police had probable cause because, under the totality of the circumstances test, a reasonable officer *could* conclude (as opposed to *must* conclude) that there was a substantial chance of criminal activity. *Id.* at 60-61. The Court expressly disavowed any sort of "divide-and-concur" approach where reviewing courts would determine if each fact standing alone could provide probable cause. *Id.* Additionally, officers are not required to take as true a suspect's explanation for suspicious facts. *Id.* at 61. "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* Moreover, "evidence of every element of a crime is not required for a showing of probable cause." *Gates v. Khokhar*, 884 F.3d 1290, 1300 (11th Cir. 2018). The courts have "never imposed a rigid requirement that an arresting officer must have specific evidence of suspects' 'subjective intent' when their conduct otherwise gives rise to probable cause to arrest." *Davis v. City of Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023) (citation omitted).

Here, Officer Stewart arrived on-scene and observed refuse strewn

23

everywhere in the woods next to the road. (Doc. 87-3 at 6:00-10:40). She followed Fields deeper into the woods and observed him digging through a stack of materials to find a prior trespass warning issued to him. (Id.) Officer Stewart also knew that Fields had been told to clean up the refuse on at least two prior occasions: once by Code Enforcement in the weeks leading up to the incident and another time by Officer Stewart herself a month before the incident. (Id. at 28:00-28:35). In that prior interaction, Fields had told Officer Stewart that he was going to move his items to a storage unit. (Id.) Even if Fields were to provide a reasonable explanation for what he intended to do with the refuse around him, an arresting officer is not required to believe it or work to rule the explanation out. This concept is even more applicable in this case, where Officer Stewart had been told the same thing— "I am moving my stuff to a storage unit"— a month prior to the incident, and the items were still there. The Officers, therefore, had probable cause, and at least arguable probable cause, to arrest Fields for littering.

ii.    <u>March 24, 2022 Arrest.</u>

Regarding the March 24, 2024 arrest, as discussed above, Officer D'Allaird found Fields with the accoutrements that could easily be associated with a highway-side window cleaning business. Fields was holding a sign that said "Need" and a squeegee, along with a tire rim sitting upright immediately next to the road with a white cloth sticking up and angled towards oncoming traffic. (Doc. 80-4 at 0:01)

24

Fields told Officer D'Allaird he had "a whole gallon of window cleaner." (Id. at 5:30). Officer D'Allaird told Officer Howse at the scene that he believed Fields was approaching D'Allaird to ask if he needed a window clean when D'Allaird first arrived. (Id. at 14:15-15:15). Fields also asked Officer D'Allaird if he thought it was a good plan to create space on the side of the road so cars could pull over for him. (Id. at 2:40). Under these circumstances, the Officers had probable cause and at least arguable probable cause to arrest Fields for solicitation.

Additionally, the District Court erred by not conducting a probable cause analysis into O.C.G.A. § 16-7-63(a), which was argued by the Officers. O.C.G.A. § 16-7-63(a) provides:

> It shall be unlawful:
> ...
> (2) To burn any brush, field, forest land, campfire, or debris, whether upon one's own land or another, without taking the necessary precautions before, during, and after the fire to prevent escape of such fire onto the lands of another. The escape of such fire shall be prima facie evidence that necessary precautions were not taken.
>
> (3) For any person to cause a fire by discarding any lighted cigarette, cigar, debris, or any other flaming or smoldering material that may cause a forest fire.

Even if this Court were to determine the Officers did not have arguable probable cause to arrest Fields for solicitation, "[t]he existence of arguable probable cause for any arrestable offense provides qualified immunity" no matter the announced offense. *Andrews v. Marshall*, 845 F. App'x 849, 853 (11th Cir. 2021)

25

(citation omitted). Fields' fire was adjacent to dry vegetation and forest land. The fire held flaming debris and was not controlled, exploding at least once in the presence of Officer D'Allaird due to a lighter Fields placed in the fire. Accordingly, the Officers had arguable probable cause to arrest Fields for violating O.C.G.A. § 16-7-63(a).

Ultimately, the District Court applied the incorrect legal framework by exclusively relying on the Officers' subjective intent as indicative of lacking arguable probable cause. Under the proper framework, the Officers were confronted with circumstances that gave them at least arguable probable cause to arrest Fields for littering and solicitation, as well as the uncharged fire burning offense.

## C. The District Court erred in applying the incorrect legal framework for determining whether an unconstitutional seizure occurred.

The District Court erred in applying the incorrect legal framework for determining whether an unconstitutional seizure of Fields' property interests had occurred, because, if a seizure did occur, the District Court stopped short of analyzing whether the seizure was reasonable.[3] The District Court concluded that

---

[3] The Officers question whether the "meaningful interference with a possessory interest" definition of seizure will remain good law. *See Torres v. Madrid*, 592 U.S. 306, 312 (2021) ("It is true that, when speaking of property, from the time of the founding to the present, the word 'seizure' has meant a 'taking possession.'" (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (quoting 2 Webster 67))); *see also Torres*, 592 U.S. at 331-332 (Gorsuch, J., dissenting ("[The Majority] accepts that a seizure of the inanimate objects mentioned in the Fourth Amendment (houses, papers, and effects) requires possession…The Fourth Amendment's Search and

26

the Complaint plausibly alleged a seizure, but it stopped short in analyzing whether it was an unconstitutional seizure. (Doc. 112 at p. 16). After a defendant sufficiently establishes she was acting within her discretionary authority, the next step of the qualified immunity analysis requires the Fields to establish a violation of a constitutional right and that the right was clearly established in the circumstances presented. *Johnson*, 107 F.4th at 1301. As discussed in Section A above, the District Court did not conduct a clearly-established law analysis. However, regarding the Fourth Amendment property seizure claim, the District Court also did not complete a constitutional violation analysis.

The Fourth Amendment does not protect against all seizures; it protects against unreasonable seizures. "In order to establish a Fourth Amendment violation, the plaintiffs must demonstrate that a seizure occurred and that it was unreasonable." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 523 (11th Cir. 2019) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997). Here, the District Court determined that Fields had plausibly alleged a seizure, because he had alleged "a meaningful interference with an individual's possessory interest in personal

---

Seizure Clause uses the word "seizures" once in connection with four objects (persons, houses, papers, and effects). The text thus suggests parity, not disparity, in meaning. It is close to canon that when a provision uses the same word multiple times, courts must give it the same meaning each time. And it is canonical that courts cannot give a single word different meanings depending on the happenstance of which object it is modifying.").

27

property." (Doc. 112 at p.16). The District Court then went no further to determine if the seizure was reasonable. *See Hoefling*, 811 F.3d at 1281 ("The next question, of course, is whether the seizure was constitutionally reasonable, and that question requires a careful balancing of governmental and private interests.") (citation omitted). The District Court applied an incorrect legal framework when it determined a constitutional violation had plausibly been alleged without first examining whether the alleged seizure was reasonable.

If a seizure did occur, it was reasonable in light of the circumstances the Officers confronted. Determining whether a seizure was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "This 'balancing of competing interests' is the key principle of the Fourth Amendment, and it is aimed at one question: whether the totality of the circumstances justified a particular sort of seizure." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1365 (11th Cir. 2024) (applying reasonableness test to property) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, (1985)). "Put differently, was the seizure more intrusive than necessary?" *Id.* The Officers could not find prior case law regarding an officer's failure to identify and secure an arrestee's property. Therefore, the Officers believe this is an issue of first impression.

i.     June 10, 2021 Incident.

Beginning with the June 10, 2021 arrest, Fields' contentions boil down to an argument that Officers Stewart, R. Lewis, and Johnson should have secured all property in the surrounding woodland which arguably may have been his. While the Officers admit that Fields may have a possessory interest in property generally, the balancing test of how reasonably an officer may be able to protect that property interest is convoluted by the fact that Fields' property is not readily identifiable or within a sphere of privacy. An expectation of privacy is normally a touchstone of whether an action constitutes a "search" under the Fourth Amendment, but it is not necessary to determining whether a "seizure" has occurred. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992). However, an expectation of privacy is considered in the second step of the seizure analysis—whether the seizure was unreasonable and, thus, unconstitutional. *See Berry v. Hennepin Cnty.*, 2024 WL 3495797 at *13 (D. Minn. July 22, 2024) ("The inquiry into the objective reasonableness of the remaining plaintiffs' expectation of privacy requires 'balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. The legal question regarding the reasonableness of these plaintiffs' subjective expectations of privacy must be viewed not only in light of the individual facts and circumstances of each alleged deprivation, but also in light of the laws and ordinances in place at the

29

time…" (citation omitted)).

Courts that have found unreasonable seizures of homeless individuals' property have done so when the property was readily identifiable and stored in distinguishable containers. *See Pottinger v. City of Miami*, 810 F. Supp. 1551, 1571 (S.D. Fla. 1992) (homeless plaintiffs exhibited a subjective expectation of privacy when property was reasonably distinguishable from truly abandoned property and an objective expectation of privacy where items were enclosed within protected containers). Here, the scope of property at the arrest scene included potentially thousands of items across the side of the road and the adjacent woodland. (Doc. 87-3 at 7:00-10:00). Assuming Fields had a subjective expectation in unidentifiable property, that expectation was not objectively reasonable in the circumstances confronting the Officers. Fields would have the Officers secure all property within the area so that he could later sift through what was his. There is no "constitutional right to store one's personal belongings on public lands." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994). *A fortiori*, there is even less of a constitutional right to store one's property on private land belonging to someone else, such as here. Therefore, Fields did not have an objectively reasonable expectation of privacy in identifiable items, and the seizure, if one did occur, was constitutionally reasonable.

ii.    March 24, 2022 Incident.

The March 24, 2022 incident follows along similar lines. There is no constitutional right for Fields to store personal belongings on the side of the road. *Id.* Nor is it objectively reasonable that officers must proactively secure property beyond those possessions on the person of an arrestee. This is not a case of officers affirmatively taking physical possession of property and detaining or destroying it. To the extent Fields alleges "upon information and belief" that each of these individual officers affirmatively destroyed his property after arresting him, that factual allegation is conclusory and relies solely on the Officers being present at the scene. (Doc. 75 at ¶103). Therefore, Fields has not sufficiently alleged an unreasonable seizure and constitutional deprivation.

## D. The District Court erred by not considering whether the Officers were entitled to qualified immunity on Fields' excessive force claim.[4]

The District Court erred in finding that the false arrest claim survived (as addressed above) and then compounded the error by failing to independently consider whether the Officers were entitled to qualified immunity on Fields' excessive force claim. The District Court correctly concluded that the excessive force claim was subsumed into the false arrest claim. However, as discussed above, the Officers contend that the false arrest claim should have been barred by qualified

---

[4] As noted previously, Fields has dismissed his excessive force claim against Defendants Stewart, R. Lewis, and Johnson.

31

immunity, and the Officers also argue they did not violate any clearly established law such that the District Court should have granted them qualified immunity on the excessive force claim. Accordingly, if this Court determines the Officers are entitled to qualified immunity on the false arrest claim, then this Court should either (1) determine if the Officers employed excessive force and violated clearly established law or (2) remand the excessive force claim back to the District Court with instructions to conduct a qualified immunity review of the excessive force claim.

In determining whether an officer's use of force violates clearly established law, there are two steps for the Court. *Johnson*, 107 F.4th at 1301 (citing *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021)). First is the consideration of whether the specific kind of force is "categorically unconstitutional." *Johnson*, 107 F.4th at 1302 (citing *Charles*, 18 F.4th at 699). Assuming a determination that the subject force is not categorically unconstitutional, then the Court must weigh factors such as those set forth in *Graham v. Connor*, 490 U.S. 386, 388 (1989), to determine if the amount of force used was excessive. *Johnson*, 107 F.4th at 1302. The analysis of the totality of the circumstances is viewed from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts rather than with the 20/20 vision of hindsight. *Ireland v. Prummell*, 53 F.4th 1274, 1302 (11th Cir. 2022). This Court's precedent is that the use of a taser is not a categorically unconstitutional kind of force, so the analysis here should focus on the *Graham*-type

32

factors. *Charles*, 18 F.4th at 701.

The non-exhaustive list of factors set forth by the Supreme Court in *Graham* as well as factors added by case law include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) whether the suspect "is actively resisting arrest or attempting to" flee, (4) "the relationship between the need and amount of force used," and (5) "the extent of the injury inflicted" on the suspect. *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019).

i.    March 24, 2022 Incident.

Fields argued in the proceedings below that if the March 24, 2022 officers did have probable cause to arrest Fields, they still used excessive force to effectuate the arrest, because Officer D'Allaird used a taser while Fields was situated in an elevated position on the guardrail and Fields was compliant at all relevant times. (Doc. 91 at pp. 21-22). It is important to note that in the Amended Complaint, the claims as to the other two officers do not involve a taser. The only particularized factual allegations regarding Officer K. Lewis' use of force were that she "grabbed Fields's left hand" after Fields was informed he was under arrest and later attempted to pull Fields' hands behind his back once he went down the hill. (Doc. 75 at ¶¶91 and 97). The complaint's only factual allegations regarding Officer Howse's use of force were that he "grabbed Fields's right arm" and later attempted to pull Fields' hands

33

behind his back once he went down the hill. (Id. at ¶¶90 and 97). Fields does not allege, and the video footage does not depict, that Officers K. Lewis or Howse ever used a taser on Fields. (See Doc. 80-4 at 28:10 onwards).

Fields cites no case law to support the proposition that an officer effectuating an arrest may not physically touch the person they are arresting. Indeed "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Charles*, 18 F.4th at 699 (citation omitted). Fields also pleads no factual allegations about what injuries he received from this alleged excessive force, only stating he went to the hospital for medical attention. (Doc. 75 at ¶101). Thus, the use of force employed by Officers K. Lewis and Howse did not violate clearly established law.

In support of Fields' argument that Defendant D'Allaird violated clearly established law with the use of his taser, Fields cites to *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), and *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021). He cites *Fils* for the proposition that tasing a disorderly conduct arrestee is excessive, and *Bradley* for the proposition that a person who is at an elevated height is possibly at risk of serious bodily harm. However, both cases diverge drastically from the fact pattern of this case and cannot form the basis of clearly established law.

*Fils* was in a summary judgment posture, and the court decided there was a material dispute of fact given there were differing accounts of whether the plaintiff

34

was inciting a crowd at the time, had resisted arrest, and what exact force the officers used. Specifically, the district court had determined there was evidence one of the officers "[ground] his taser into [plaintiff's] neck and appl[ied] a contact tase" and another officer "fired a second taser probe into [plaintiff's] rib cage either when [plaintiff] had tensed up following [first officer's] initial tase or after he had fallen to the ground." *Fils*, 647 F.3d at 1281.

In *Bradley*, which was also in a summary judgment posture, the defendant officer could not articulate why he stopped the plaintiff's vehicle, and after the plaintiff attempted to flee on foot, the defendant tased the plaintiff while the plaintiff was on top of an eight-foot wall. The *Bradley* Plaintiff fell off the wall and to his death.

While solicitation is a misdemeanor, in reviewing the videos, it is clear that when considering the other factors, the force used by the Officers was not excessive. After being informed he was under arrest, Fields moved backward toward the guardrail and began to swing his leg over the guardrail. Officer D'Allaird deployed his taser on Fields after Fields moved away from the Officers, began to swing himself over the guardrail, and refused to comply with an arrest order. Fields verbally confirmed that he was resisting arrest and that he did not care what the officers were saying, kicking the officers, told the officers that they could kill him because he was not going to jail, stated that he would die rather than go to jail, and

35

repeatedly yelled he was not going to jail. The Officers used force on Fields' arms, legs, and back in an attempt to handcuff him and prevent further kicking.

To the extent Fields alleges Officer D'Allaird used a taser in dangerous circumstances, the fire department had already put out Fields' fire and secured the immediate area. Fields was not positioned at a precarious height, like atop an eight-foot wall. Fields had also verbally and physically refused to put his hands behind his back at the Officers' directions, stating he did not care if they used a taser. Fields' allegations that the force used was malicious are only seated in Fields' contention that the Officers discussed beforehand why they should arrest Fields. Fields does not allege facts sufficient to support the contention that the Officers intended in bad faith to hurt Fields. A discussion about what laws Fields may be violating is not out of the ordinary and should not be construed as the basis for a malicious intention to physically hurt someone. Regardless, "[t]he Fourth Amendment inquiry is one of objective reasonableness under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Graham*, 490 U.S. at 398.

The Officers did not violate clearly established law. Officers Howse and K. Lewis only used grappling force, and Officer D'Allaird deployed a taser only once and after Fields jerked his arms away from Officers Howse and K. Lewis. *See Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000) (grabbing arrestee, pushing him

against a van, and placing a knee on arrestee's back is not excessive force when there is probable cause for arrest). Fields suffered no articulable injuries, while the Officers did. Accordingly, under the totality of the circumstances, a reasonable officer facing the same lack of compliance and physical resistance that Fields displayed would agree that the force employed here by the Officers did not constitute a violation of Fields' constitutional rights, and the Officers are entitled to qualified immunity.

## E. The District Court erred in determining the Officers were not entitled to official immunity on Fields' state law claim of trespass to property.

The District Court erred in determining the Officers were not entitled to official immunity on Fields' state law claim of trespass to property because the Officers had probable cause to arrest Fields for the offenses for which he was charged, and Fields has failed to allege sufficient facts that would plausibly establish that the Officers maliciously intended to interfere with his property interests without justification. In Georgia, officers enjoy official immunity to state law tort claims arising out of the performance of their discretionary duties, unless their actions were performed with actual malice or actual intent to cause injury. Ga. Const. Art. I., Sec. II, Para. IX(d). "[A] discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003). "[T]he decision to effectuate

37

a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer." *Id.*

The Georgia Supreme Court has defined actual malice to mean "deliberate intention to do wrong." *Adams v. Hazelwood*, 271 Ga. 414, 414-415, 520 S.E.2d 896, 898 (1999). "Nor does actual malice encompass merely the reckless disregard for the rights and safety of others." *Gates v. Khokar*, 884 F.3d 1290, 1304 (11th Cir. 2018). "Likewise, the phrase 'actual intent to cause injury'—as used in Georgia's official immunity provision—means an actual intent to cause harm to, not merely an intent to do the act purportedly resulting in the claimed injury." *Id.* "Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." *Selvy v. Morrison*, 292 Ga. App. 702, 706, 665 S.E.2d 401, 406 (2008). Moreover, "[t]he fact that a government officer or employee exercised poor judgment or that his or her decisions were 'misguided' or 'flawed' is not evidence of actual malice that would deprive the officer or employee of official immunity." *Mommies Properties, LLC v. Semanson*, 366 Ga. App. 153, 163-164, 880 S.E.2d 376, 386-387 (2022) (citation omitted).

The District Court relied on its findings that the Officers arrested Fields without probable cause to infer that the Officers plausibly intended to maliciously interfere with Fields' property interests without justification. (Doc. 112 at p. 17).

38

However, as discussed above, the Officers had probable cause to arrest Fields. Further, intent to arrest someone, even if wrongful, does not imply an intent to interfere with someone's possessory property rights. *Gates*, 884 F.3d at 1305 ("the most that can be made of them is that plaintiff was arrested and subjected to the routine inconveniences that attend any arrest."); *Reed*, 264 Ga. App. at 86, 589 S.E.2d at 587 ("Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies.").

Fields has not alleged sufficient facts to plausibly establish that the Officers intended to deprive him of his property without justification. The Officers believed they had probable cause; they in fact had probable cause, and at no point did any of them express an interest in depriving Fields of his property. Indeed, in the June 10, 2021 arrest, Defendant Stewart took care to search Fields' person and to secure his property prior to placing him in the patrol vehicle. (Doc. 87-3 at 36:10-38:40). Fields has failed to allege sufficient facts to plausibly allege the Officers intended to deprive him of his property, and therefore, Defendants are entitled to official immunity on Fields' state law trespass to property claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's denial of the Officers' Motions to Dismiss on qualified immunity and official immunity grounds. For all federal claims, the Officers violated no clearly established law, and,

39

applying the correct legal framework and erven taking Fields' uncontroverted facts as true, Fields suffered no constitutional injuries. For Fields' state claim, Fields has failed to allege sufficient facts to plausibly allege the Officers intended to deprive him of his property.

This 23rd day of July, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Cullen B. Threlkeld*

_____
RICHARD A. CAROTHERS
Georgia Bar No. 111075
ANGELA C. COUCH
Georgia Bar No. 190005
CULLEN B. THRELKELD
Georgia Bar No. 669027
Attorneys for Appellants

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: richard.carothers@carmitch.com
        angela.couch@carmitch.com
        cullen.threlkeld@carmitch.com

40

## **Certificate of Compliance with Type-Volume Limit**

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 32(a)(7)(b)(I) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 9,885 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in Times New Roman font size 14.

This 23rd day of July, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Cullen B. Threlkeld*

_____
RICHARD A. CAROTHERS
Georgia Bar No. 111075
ANGELA C. COUCH
Georgia Bar No. 190005
CULLEN B. THRELKELD
Georgia Bar No. 669027
Attorneys for Appellants

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: richard.carothers@carmitch.com
        angela.couch@carmitch.com
        cullen.threlkeld@carmitch.com

41

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **BRIEF OF APPELLANTS KYLE HOWSE, ARIEL STEWART, WAYNE JOHNSON, ROINELL LEWIS, CHRISTIAN D'ALLAIRD & KAYELYN LEWIS** with the Court using the CM/ECF system which will automatically send electronic mail notification of such filing to the below counsel of record:

Amanda Kay Seals
Edwin Allen Page
Bondurant Mixson & Elmore, LLP
One Atlantic Center, Suite 3900
1201 W. Peachtree St NW
Atlanta, Georgia 30309
seals@bmelaw.com
page@bmelaw.com

This 23rd day of July, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Cullen B. Threlkeld*
RICHARD A. CAROTHERS
Georgia Bar No. 111075
ANGELA C. COUCH
Georgia Bar No. 190005
CULLEN B. THRELKELD
Georgia Bar No. 669027
Attorneys for Appellants

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: richard.carothers@carmitch.com
angela.couch@carmitch.com
cullen.threlkeld@carmitch.com

42